IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


**JEFFREY FORTER,**

    Plaintiff,

           v.

**RANDY GEER, et al.**,

    Defendants.

No. 3:10-cv-06065-MO

OPINION AND ORDER


    **MOSMAN, J.**,

    *Pro se* plaintiff Jeffrey Forter is an inmate at the Oregon Department of Corrections

("DOC") and a practicing member of the Christian Identity Faith.  Christian Identity is a

Christianity-based religion based largely on the supremacy of Caucasians—specifically Northern

Europeans.  While it is ostensibly peaceful, many of its central tenets are conspicuously racist

and anti-Semitic, and some of its followers have construed these tenets as espousing violence.

    On March 18, 2010, Mr. Forter filed a Complaint [2] against several DOC employees

(collectively, "defendants"), in their individual and official capacities, pursuant to 42

U.S.C.§ 1983.  On May 2, 2011, he filed an Amended Complaint. (Pl.'s Mot. to File. Am.

Compl.[40] Att. 1) ("Pl.'s Amended Compl.").  The Amended Complaint alleges that defendants

rejected a box of Christian Identity materials sent to him by the Kingdom Identity Ministries, refused to recognize the Christian Identity religion officially, denied his request for a kosher diet, and refused to provide access to religious facilities for the Christian Identity religion.  Mr. Forter claims violations of his rights to free speech, free exercise, equal protection, and due process, all essentially based on the theory that defendants unlawfully singled out the Christian Identity religion. He also challenges the constitutionality of Or. Admin. R. 291-131-0035(2)(j), which allows DOC employees to reject "inflammatory material" mailed to inmates.  Finally, he argues the defendants violated his statutory rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  He seeks injunctive relief and damages.

Defendants filed a Motion to Dismiss [58], which concedes that they withheld at least some of the documents sent in a box from the Kingdom Identity Ministries (they withheld the entirety of the box initially; on second review they withheld only select pamphlets).  The motion argues that while plaintiff exhausted administrative remedies regarding alleged misconduct pertaining to the rejected box of materials, he failed to exhaust administrative remedies for all of the other alleged misconduct.

Defendants also filed a Motion for Summary Judgment [62] regarding the rejected box of materials, arguing there was neither a constitutional violation nor a RLUIPA violation, individual defendants are entitled to qualified immunity on that claim because their conduct did not violate clearly established law, and to the extent defendants were named in their official capacity the state is entitled to sovereign immunity.

At issue now are both the Motion to Dismiss and the Motion for Summary Judgment. I GRANT the Motion to Dismiss with leave to amend, and I GRANT the Motion for Summary Judgment.

2 – OPINION AND ORDER

## UNENUMERATED 12(B) MOTION TO DISMISS FOR FAILURE TO EXHAUST
### ADMINISTRATIVE REMEDIES[1]

Defendants argue (1) that the DOC regulations provide two forms of administrative remedies, (2) that plaintiff has only exhausted one of those two avenues with respect to his claims resting on withheld mail (i.e., by filing an inmate discrimination complaint and appealing its denial), and (3) that this court should dismiss the remaining claims for failure to exhaust administrative remedies.  (Mem. Supp. Def. Mot. Dism. [59] 5).

### *Procedure and Standard*

In the Ninth Circuit, an unenumerated 12(b) motion to dismiss—rather than a motion for summary judgment—is the proper form for resolving a dispute regarding failure to exhaust administrative remedies pursuant to § 1997e(a).  *Wyatt v. Terhune,* 315 F.3d 1108, 1119 (9th Cir. 2003).  In the exhaustion context, the motion to dismiss forum does not limit a court to the face of the pleadings; the district court may look to evidence beyond the pleadings as needed to determine whether a plaintiff has exhausted administrative remedies. *Id.* at 1120.

Defendants bear the burden of showing failure to exhaust.  Where the available evidence persuades the court that the petitioner has not exhausted available nonjudicial remedies, the proper disposition is dismissal without prejudice.  *Id.*

### *Analysis*

42 U.S.C. § 1997e(a) requires a prisoner to exhaust "[a]ll available remedies . . . for all actions brought with respect to prison conditions."  *Porter v. Nussle,* 534 U.S. 516, 524 (2002) (quotations omitted).  The sole trigger for this requirement is availability of remedies within the prison system; whether the remedies meet federal standards or are "plain, speedy, and effective"

---

[1] On March 8, 2012, I issued an order that provided plaintiff with notice under *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), and gave Mr. Forter 30 days to submit evidence in response to defendants' unenumerated motion. Plaintiff has submitted no additional evidence.

is immaterial. *Id.* A district court's enforcement of the exhaustion requirement is "mandatory." *Id.* In line with that principle, futility does not excuse failure to exhaust. *Booth v. Churner,* 532 U.S. 731, 741 n.6 (2001).

The evidence currently before the court fulfills defendants' burden to show that administrative remedies were available to Mr. Forter and that he has not exhausted them. Defendants' motion alleges that Mr. Forter did not attempt to pursue or exhaust the prison system's administrative remedies with respect to any claim that rests on one of the following issues: (1) kosher diet access; (2) official recognition of Christian Identity; (3) Christian Identity use of Oregon DOC chapels; (4) baptism by Christian Identity clergy; (5) Christian Identity congregate worship; (6) Christian Identity bible study; (7) Christian Identity religious videos; and (8) Christian Identity volunteers. (Mem. Supp. Def. Mot. Dism. [59] 5).

Mr. Forter does not dispute that an administrative procedure (specifically, a process for filing either grievances or inmate discrimination complaints and appealing decisions thereon) exists. Rather, Mr. Forter's opposition to the Motion to Dismiss advances two arguments, both of which fail on the current record.

Regarding the claims resting on congregant worship, use of DOC chapels, and Bible study, Mr. Forter argues that the remedies would have been futile. (Pl.'s Opp. Def. Mot. Dism. [75] 2). Mr. Forter cites an inapposite case dealing with "effective unavailability." *See Sapp v. Kimbrell,* 623 F.3d 813, 822–23 (9th Cir. 2010). By contrast to the futility argument, which deals with anticipated efficacy (or lack thereof) of available remedies in bringing about the desired result, "effective unavailability" describes a situation where the procedural channel was available in theory, but was not actually available to the plaintiff due to some error outside of his control. *Id.* Because that does not describe plaintiff's situation, and because futility does not

excuse non-exhaustion, *see Booth,* 532 U.S. at 741 n.6, Mr. Forter's exhaustion argument is without merit.

Regarding the remaining claims, Mr. Forter argues that he did, in fact, exhaust administrative remedies by filing either an "Inmate Discrimination Complaint" or a "grievance" and a subsequent appeal. (Pl.'s Opp. Def. Mot. Dism. [75] 2) (referring to a discrimination complaint); (Aff. of J. Forter [80] 3) (referring to a grievance).[2]  Defendants disagree based on their records, and assert that Mr. Forter provides no evidence to support that claim.  (Def. Reply in Supp. Mot. Dism. [85] 2).  The evidence on this point is confusing; whether plaintiff *pursued* any administrative avenues regarding these claims is not clear.  Nevertheless, the current record suggests that Mr. Forter has not *exhausted* administrative remedies; hence dismissal without prejudice is appropriate.

Defendants have provided a declaration from the facility's grievance coordinator as evidence for plaintiff's failure to exhaust.  (Decl. of J. Hanson [61]).  Mr. Hanson declares that plaintiff filed seven grievances, none of which pertains to any of the claims whose exhaustion is in dispute.  (*Id.* at 4–6.).  The declaration includes copies of all of these grievances as attachments, and none of these grievances are relevant to any of the claims in Mr. Forter's Amended Petition.  Mr. Hanson's declaration is somewhat problematic, because it omits a relevant grievance Mr. Forter appears to have filed.  Specifically, attached to Mr. Forter's affidavit is a grievance form that deals with the prison chaplain's failure to recognize Christian Identity in substantially the same ways Mr. Forter alleges his Inmate Discrimination Complaint listed.  The grievance is stamped as "received" and "accepted" by the grievance coordinator on

---

[2] An inmate discrimination complaint and a grievance involve two separate procedures.  (*See* Decl. of J. Hanson [61] Att. 2 at 1) (grievances); (Decl. of J. Humphreys [60] Att. 2 at 2) (discrimination complaints).  What matters is whether plaintiff filed an administrative appeal, not whether he initially filed a complaint or a grievance.

5 – OPINION AND ORDER

April 27, 2011. (Aff. of J. Forter [80] Ex. 2 at 1.).  Following that exhibit is a second attachment, which is a response to the grievance, dated May 31, 2011.  That response appears not to be a final one: it states in substance that (a) the process of recognizing a religion requires the chaplain to make a determination based on information gathered from the religious organization's proponents, (b) the chaplain requested such information from three leading Christian Identity proponents by mail, and (c) the chaplain was still awaiting any response at the time the grievance response was issued.  (Aff. of J. Forter [80] Ex. 3 at 1).  No evidence of any further administrative processes appears in the record.

I find that the evidence, albeit muddled, supports defendants' argument that Mr. Forter has not exhausted his administrative remedies.  Defendants have produced evidence that Mr. Forter has failed to exhaust administrative remedies.  Although that evidence is apparently incomplete, it is still effectively uncontroverted because Mr. Forter's ostensibly contrary evidence still fails to show exhaustion.  While his briefing refers to an inmate discrimination complaint and subsequent appeal, the evidence supports only a grievance on which he does not claim to have filed an appeal. (*See* Pl.'s Opp. Def. Mot. Dism. [75] 2); (Aff. of J. Forter [80] 3).  For that reason, it is unclear whether Mr. Forter's position is that he exhausted administrative remedies by filing an inmate discrimination complaint and a subsequent appeal (a position for which the record contains no supporting evidence), or by filing a grievance (supplied by the record) and a subsequent appeal (not supplied by the record).

For these reasons, I dismiss all of Mr. Forter's claims that do not rest on the issue of withheld mail, and I grant Mr. Forter leave to amend his complaint in three ways:

(1)  Regarding the claims listed which Mr. Forter alleges he exhausted, clarify whether it rests on a grievance, an inmate discrimination complaint, or both;

(2)    Regarding the claims in (1), and depending on his response to (1), provide either (a)

evidence that he that he has requested a final decision on his grievance and

defendants have refused to deliver one, or (b) evidence that he has received a final

decision and pursued the appropriate administrative appeals process before seeking

relief in this Court, or (c) evidence that he has filed an inmate discrimination

complaint and a subsequent appeal;

(3)    Regarding the claims Mr. Forter does not allege he exhausted, either (a) provide

evidence that he has pursued and exhausted administrative remedies, rather than

merely alleging that doing so would have been futile, or (b) remove those claims

from his Complaint.

## MOTION FOR SUMMARY JUDGMENT

The claims that are not the subject of the defendants' Motion to Dismiss are subject to

defendants' Motion for Summary Judgment.  This Motion includes substantive attacks on the

claims themselves, as well as on defenses of qualified immunity, sovereign immunity, and

RLUIPA's "safe harbor" provision.  (Mem. Supp. Def. Mot. Summ. J. [63] 1, 5–6).

### _Standard_

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law.' Fed. R. Civ. P.

56(a).  The party seeking summary judgment bears the initial burden of demonstrating no

genuine dispute of material fact exists.  _Celotex Corp. v. Catrett,_ 477 U.S. 317, 323 (1986).  All

material facts are resolved in a light most favorable to the nonmoving party.  _Coverdell v. Dept._

_of Soc. Health & Servs_., 834 F.2d 758, 761 (9th Cir. 1987).  The court must accept all evidence

and make all inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

<u>*Analysis*</u>

Because I grant defendants' Motion to Dismiss, the only remaining factual basis for Mr. Forter's non-exhausted claims is the mail the prison has withheld.  This theory breaks down into two sub-issues: (1) the full package the prison originally withheld prior to the second review, based on which Mr. Forter seeks damages, and (2) the portion of the package the prison has continued to withhold—including eight pamphlets (the "eight pamphlets") and a poster— based on which Mr. Forter seeks both damages and injunctive relief.  Together, these form the bases for Mr. Forter's RLUIPA, freedom of religion, equal protection, procedural due process claims, and vagueness/overbreadth claims.  Defendants' Motion for Summary Judgment responds that no violation of RLUIPA or of any constitutional provision has taken place, and that in the alternative, defendants are qualifiedly immune and the state has not waived its sovereign immunity. (Mem. Supp. Def. Mot. Summ. J. [63] 1).

For the reasons below, I find that defendants are entitled to summary judgment on all claims and issues that I have not otherwise dismissed.

*(1) The Prison's Original Decision to Withhold the Entire Package*

It is not necessary to reach the merits of any of Mr. Forter's supporting arguments that rest on this portion of the facts, because a remedy is not available under any legal theory these facts support.  RLUIPA does not provide a basis for relief, because it contains a safe-harbor provision.  42 U.S.C. § 2000cc-3(e) provides:

> A government may avoid the preemptive force of any provision of this chapter by changing the policy or practice that results in a substantial burden on religious exercise, by retaining the policy or practice and exempting the substantially burdened religious exercise, by providing exemptions from the policy or practice

for applications that substantially burden religious exercise, or by any other means that eliminates the substantial burden.

While this Court is not aware of any Ninth Circuit cases construing this provision, this Court and other district courts in this circuit have interpreted it according to its plain meaning. *See Tyson v. Guisto,* 06-cv-1415-MO, 2008 WL 2673371, at *2 (D. Or. June 27, 2008), *rev'd on other grounds,* 360 F. App'x. 900 (9th Cir. 2009); *McDaniels v. Fischer,* 10-823-JPD, 2011 WL 2976873, at * 15 (W.D. Wash, June 17, 2011). Accordingly, since neither party disputes that the majority of the contents of the package have since been delivered to Mr. Forter, I find that RLUIPA does not provide Mr. Forter a remedy with respect to those contents.

The constitutional claims also fail to provide Mr. Forter a basis for relief with respect to the materials Mr. Forter is now permitted to possess. For reasons discussed below, the constitutional claims do not provide a basis for monetary damages based on the combined effect of qualified immunity and sovereign immunity. Thus, the only viable components of Mr. Forter's claim are injunctive. Since the package has been delivered to Mr. Forter, an injunctive claim is moot. Mr. Forter has not argued that exceptions to the mootness doctrine apply here. Were he to, he would not succeed: the only exception that could plausibly apply is that his case is capable of repetition yet evades review, and such an exception is limited to "exceedingly rare" cases. *See Alvarez v. Hill,* 667 F.3d 1061, 1065 (9th Cir. 2012) (finding prisoner's religious freedom claims were moot after he was released from custody and no exception applied). With respect to the contents that the mailroom elected to deliver to petitioner after it reviewed the contents of the package a second time, the evidence does not support a "reasonable expectation" that Mr. Forter will be subjected to similar action again. *See id.* Any threat of repetition seems to lie in defendants' continued belief that certain materials should not be permitted, and that threat

is more appropriately addressed in the context of the materials the defendants continue to withhold.

Accordingly, I find that the constitutional claims and the RLUIPA claim are moot to the extent that they rest on the portion of the package that was initially withheld but has since been delivered.  Summary judgment is appropriate with respect to that component of those claims.

*(2) The Prison's Continued Decision, After Review, to Withhold Eight Pamphlets and a Poster from the Original Package*

Mr. Forter rests a RLUIPA claim and several constitutional claims (free exercise of religion, equal protection, due process, and vagueness/overbreadth) on defendants' continued decision to withhold the eight pamphlets. (Pl.'s Amended Compl. [40] 7–10).  Each claim includes both an injunctive component and a monetary damages component.  (*Id*. at 11–12).  For reasons explained below, I grant defendants' Motion for Summary Judgment with respect to damages and injunctive relief on all claims.

a.   <u>Damages</u>

Since plaintiff brings suit against employees of the DOC and his caption does not specify in what capacity he is suing them, his request for damages can take one of two forms: a request for damages from the individual defendants, or a request for damages from the state.  *See Kentucky v. Graham,* 473 U.S. 159, 165–66, 167 n.14 (1985) (an individual capacity suit is a suit against the individual that seeks personal liability, whereas an official capacity suit is a suit against the government entity itself; a suit may name defendants in either or both capacities).  Neither avenue can provide Mr. Forter with damages, because sovereign immunity protects the state in this case and qualified immunity protects the individual defendants.

### 1. Sovereign Immunity

Neither § 1983 nor RLUIPA overrides sovereign immunity, and a state's decision to accept federal funding does not constitute a waiver. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 67 (1989) (Section 1983); *Sossamon v. Texas,* 131 S. Ct. 1651, 1663 (2011) (RLUIPA); *see also Alvarez,* 667 F.3d 1061.

### 2. Qualified Immunity

Qualified immunity shields defendants from personal liability regarding any of the claims defendants' Motion for Summary Judgment addresses. Defendants are only subject to personal liability on a claim if two things are true: (1) the evidence makes out a violation, and (2) clearly established law proscribes the violation. *Pearson v. Callahan,* 555 U.S. 223, 232 (2009). For reasons discussed below, the evidence does not support violations based on plaintiff's constitutional claims *(i.e.,* equal protection, freedom of religion, and procedural due process). It also does not support a RLUIPA violation; moreover, even if it did, I do not find any clearly established law proscribing defendants' conduct. *See Barendt v. Gibbons,* 10-15954, 2012 WL 210525, at*1 (9th Cir. Jan. 25, 2012) (finding defendants entitled to qualified immunity and reasoning "[t]here exists little Ninth Circuit authority construing RLUIPA") (quoting *Warsoldier v. Woodford,* 418 F.3d 989, 997 n.7 (9th Cir. 2005)).

Thus, I grant summary judgment with respect to all claims that defendants' Motion for Summary Judgment addresses.

### b. Scope of Injunctive Claims

The remaining discussion, which is devoted to the injunctive components of Mr. Forter's constitutional and RLUIPA claims, is based solely on the eight pamphlets and a poster. I will begin with a discussion of the poster.

The parties do not clarify whether Mr. Forter also seeks injunctive relief regarding the poster.  Mr. Forter's Amended Complaint is unclear as to whether it also seeks injunctive relief regarding the poster.  Defendants repeatedly refer to the "eight pamphlets and one poster." (*See, e.g.,* Mem. Supp. Def. Mot. Summ. J. [63] 12).  Mr. Forter does not appear to rely on the poster as factual support for any of his claims, although his repeated use of the phrase "books and other publications" could plausibly be read as including the poster. (*See, e.g.,* Pl.'s Amended Compl. at 8).

The undisputed evidence establishes that defendants have elected to withhold the poster solely because it exceeds size limitations. (Decl. of R. Geer [64] 8).  These limitations prohibit "[a]ny item larger than 18" X 18" except subscription newspapers." (*Id.,* Att. 2 at 8).  Mr. Forter does not argue that the withholding of the poster constitutes a substantial burden on his religious exercise, *see* 42 U.S.C. § 2000cc-1, nor does he claim that the applicable regulation is overbroad, that it is vague, or that defendants have applied it differently to similarly situated individuals.  Thus, the only claim that could control the withholding of the poster is his constitutional freedom of religion claim.  Even if strict scrutiny governed that claim (which, for reasons discussed in the next section, it does not), a size restriction on a poster would not violate Mr. Forter's First Amendment rights.  *See Emp't Div., Dep't of Human Res. v. Smith,* 494 U.S. 872, 879 (1990) (laws that are generally applicable, neutral, and otherwise valid do not violate the Free Exercise Clause).

Accordingly, I grant summary judgment for the defendants on any claim Mr. Forter intends to raise for injunctive relief with respect to the poster.  I will now discuss Mr. Forter's claim for injunctive relief as to the eight pamphlets.

c. Substantive Constitutional Claims

Even construed most favorably to Mr. Forter, the evidence does not reveal a genuine dispute of material fact: Mr. Forter has not met the burden required of a prisoner alleging constitutional violations. The following analysis addresses all of Mr. Forter's substantive constitutional claims. A separate standard, explained in the next section, governs his Fourteenth Amendment procedural due process claim.

The standard for constitutional claims raised by inmates against correctional institutions is more deferential than a strict scrutiny standard. *Turner v. Safley,* 482 U.S. 78, 84–85 (1987).[3] "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. The *Turner* standard[4] applies to all relevant constitutional claims other than the procedural due process claim (discussed separately below). *Ward v. Walsh,* 1 F.3d 873, 877 (9th Cir. 1993). *Turner* listed the following four factors relevant to this determination:

(1) Whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it";

(2) Whether there are "alternative means of exercising the right that remain open to prison inmates";

---

[3] Mr. Forter cites *McCabe v. Arave,* 827 F.2d 634 (9th Cir. 1987) for the proposition that *Turner* prohibits the defendants from withholding racially inflammatory material. Although *McCabe* held that, pursuant to *Turner,* "literature advocating racial purity, but not advocating violence or illegal activity as a means of achieving this goal, *and not so racially inflammatory as to be reasonably likely to cause violence at the prison,* cannot be constitutionally banned as rationally related to rehabilitation," *id.* at 638 (emphasis added), the context involved a facial challenge to a regulation that allowed literature to be banned solely on the basis of its racist content. *Id.* Here, by contrast, the challenged action is a case-specific determination pursuant to a regulation allowing for the exclusion of material that is inflammatory and therefore likely to threaten security. Since *McCabe's* holding excepts language "so racially inflammatory as to be reasonably likely to cause violence," it does not control this case.

[4] The *Turner* analysis also does not apply to the Eighth Amendment, which is not at issue in this case. *Ward,* 1 F.3d at 877.

(3) Whether "accommodation of the asserted constitutional right" will "impact . . .
guards and other inmates, and on [sic] the allocation of prison resources generally";
and

(4) Whether there is an "absence of ready alternatives" versus the "existence of obvious,
easy alternatives."

*Shakur v. Schriro,* 514 F.3d 878, 884 (9th Cir. 2008) (quoting *Turner,* 482 U.S. at 89–90).  At
the summary judgment stage, a district court must evaluate each of these factors to determine if a
material factual dispute is present.  *Id.*

In Mr. Forter's case, no material dispute is present with respect to any of the four factors,
each of which favors defendants on these facts.  The same theme pervades all four: the thrust of
Mr. Forter's legal arguments is primarily on how the regulation has affected him and, in his
specific case, how the prison could have done things differently (e.g., by applying the rule more
uniformly across various religions).  Mr. Forter does not appear to dispute the possibility that the
regulations—facially and as applied to him—ameliorate legitimate dangers.  Accordingly, he
does not establish a factual dispute sufficient to overcome the deference to prison officials that
this context requires me to apply.

Per *Shakur's* requirement, I analyze each *Turner* factor individually:

(1) *Defendants have offered a legitimate interest to which the challenged actions are
validly and rationally connected.*  Defendants have explained that prison staff has a
legitimate interest in ensuring order and safety.  (Decl. of R. Geer [64] 5).  This
constitutes a compelling interest (see below), and thus also constitutes a legitimate
interest.  Defendants have further explained that regulations allowing them to withhold
inflammatory materials further this interest, and that the withheld pamphlets contain

racially inflammatory material. (*Id.* at 5–6).  Mr. Forter does not appear to dispute this, nor does he dispute that the prison population is racially mixed.  Under the deferential posture a rational connection analysis entails, it is indisputable that a "rational nexus" exists between the prison's actions and the legitimate interest put forth.  *See Shakur,* 514 F.3d at 886.

(2) *Alternative means of practicing Christian Identity remain open to Mr. Forter.*  The "alternative means" prong merely requires that a plaintiff has alternative means of religious expression, not that a plaintiff has "alternative means of engaging in the particular religious practice that he or she claims is being affected."  *Ward,* 1 F.3d at 877.  It permits restrictions that impinge upon religious expression to some extent.  *Id.* In assessing the "alternative means" factor, *Ward* explained that the following distinction is instructive: "a religious expression which is a positive expression of belief [versus] a religious commandment which the believer may not violate at peril of his soul." *Id*. at 878.  For example, where an inmate's religion maintained that a haircut "defiled" him to the extent that he was "unworthy or unable to participate in the other major practices of his religion," the "alternative means" factor weighed in favor of the inmate.  *Henderson v. Terhune,* 379 F.3d 709, 714 (9th Cir. 2004).  By contrast, where working schedules kept Muslims from being able to attend a specific form of Friday prayer, the possibility of attending other types of prayers at other times compelled the conclusion that "alternative means" were available to the plaintiffs.  *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 352 (1987).

Although *Ward* did not assign outcome-determinative weight to the commandment-expression distinction, I find that it is instructive in this case.  Mr. Forter presents an

example of an "expression of belief" rather than a commandment. He does not argue that he is unable or substantially unable to practice his religion; he merely argues that all of the packages' contents are important, and that he would be able to "practice more fully" if he had complete access to the contents. (*See, e.g.,* Decl. of J. Kamins [65] Att. 1 at 64) ("Forter Dep."). The cases are clear that the "alternative means" factor does not proscribe every regulation that restricts religion, only those that fully undermine some central component of it. While some level of education is certainly a central component of most faiths, Mr. Forter is not being denied this. He has received the majority of the materials he requested. His claim that his religious exercise would be deeper if he had access to all of the materials does not introduce a material dispute regarding the availability of "alternative means."

(3)  *Accommodating Mr. Forter's request will impact guards and other inmates.*

This factor is one of degree, as some impact or inconvenience "is present in every case that requires special accommodations for adherents to particular religious practices." *Ward,* 1 F.3d at 878. *Henderson* found that in the case of the haircut (see previous factor), this factor weighed in favor of the prison because the time required to search long hair for contraband or poor hygiene implicated health and safety concerns. 379 F.3d at 714. The presence of racially inflammatory material in a population with racially diverse inmate and staff populations implicates the same concerns about health and safety of both guards and inmates, and it does so to a considerably more severe and more imminent degree than the haircut in *Henderson.*

(4) *The evidence does not support the presence of any ready alternatives to withholding the pamphlets.*  This factor is not the equivalent of a "least restrictive means" requirement.  *Turner,* 482 U.S. at 90–91.  It is merely one factor in a court's assessment of whether a regulation or action is reasonable versus exaggerated.  A plaintiff triggers it in his favor by postulating "an alternative that fully accommodates [petitioner's] rights at *de minimis* cost to valid penological interests."  *Id.* at 91. Mr. Forter has not offered any proposals that allow him to keep the materials at *de minimis* cost to the relevant penological interests.  Moreover, he would have a difficult time doing so: while he disputes at various points in his deposition the likelihood that the pamphlets would incite violence, he appears to affirm the general premise that racially inflammatory language poses a safety threat in the prison setting.  (*See, e.g.,* Forter Dep. [65] Att. 1 at 38) (explaining why his racist tattoos would result in a safety hazard if he had a black cellmate).  Had defendants continued to withhold the entire box, Mr. Forter could have argued that an individual review of the pamphlets would trigger this factor.  But since that is precisely what defendants have since done, the evidence does not support a factual dispute regarding the existence of any further alternatives whose penological costs are *de minimis.*

I conclude that the *Turner* factors all cut in favor of defendants' decision to withhold the eight pamphlets.  *See Turner,* 482 U.S. at 89.  Because the same standard applies to all of the substantive constitutional claims Mr. Forter raises, *see Ward,* 1 F.3d at 877, summary judgment is appropriate on all claims.

One of Mr. Forter's substantive constitutional claims includes an additional issue, namely a facial challenge against the applicable regulation, Or. Admin. R. 291-131-0035.  Because any facial challenge must overcome a "heavy burden," *Nat'l Endowment for the Arts v. Finley,* 524 U.S. 569, 580 (1998), and because the deferential *Turner* analysis applies equally to facial and as-applied challenges, *Bahrampour v. Lampert,* 356 F.3d 969, 975 (9th Cir. 2004), I find that summary judgment is also appropriate on that claim for the foregoing reasons.  I am mindful, however, that the language in Or. Admin. R. 291-031-0035(2)(j), which restricts "inflammatory material" and does not contain additional words of limitation, is disconcertingly broad.  The Supreme Court has found facial overbreadth— even in the prison context— in language that restricted both ingoing *and* outgoing mail that contained "inflammatory political, racial, religious or other views."  *Procunier v. Martinez,* 416 U.S. 396, 416 (1974).  In overruling *Martinez* on other grounds regarding the applicable standards for inbound mail, the Court implied that that same language would be permissible if it only regulated inbound mail; the Court stopped short of holding as much.  *See Thornburgh v. Abbott,* 490 U.S. 401, 412 n.11 (1989).  Because I find the distinction between inbound and outbound mail significant with respect to the defendants' stated interest in maintaining safety and security within the prison, I accept the distinction the Court implied without deciding in *Thornburgh,* and I find that Or. Admin. R. 291-031-0035(2)(j) is facially valid.

For these reasons, I grant summary judgment on Mr. Forter's substantive constitutional claims.

### d. Procedural Due Process

The Ninth Circuit has set specific procedural due process requirements for evaluating a prison's mail-withholding procedures: (l) notification to the inmate; (2) an opportunity for

administrative review of the decision to withhold; (3) conducted by some person other than the
person responsible for the initial decision to withhold.  *Krug v. Lutz,* 329 F.3d 692, 698 (9th Cir.
2003).  Mr. Forter's complaint admits that he received all of these things.  (*See* Amended Compl.
[40] 4:13–22 (notice), 5:4–15 (administrative review), 4:13 (different reviewers)).  Accordingly,
summary judgment is also appropriate regarding Mr. Forter's procedural due process claim.

 e. RLUIPA Claim

 An incarcerated person who brings a religious-freedom-type claim can trigger RLUIPA if
he can demonstrate the additional element that the challenged restriction on his religious exercise
constitutes a "substantial burden."  If a plaintiff successfully triggers RLUIPA, the result is
tantamount to circumventing the deferential standards that ordinarily hinder his constitutional
claims and restoring the correctional facility's burden to pre-*Turner* strict scrutiny.

 Mr. Forter has not introduced factual disputes sufficient to survive summary judgment on
his RLUIPA claim for two reasons.  First, he has not shown that defendants' withholding of the
eight pamphlets substantially burdens his religious exercise.  Second, even if he could make such
a showing, the evidence establishes that defendants' conduct would satisfy the heightened
scrutiny RLUIPA imposes.

 *1. Substantial Burden*

 The Ninth Circuit has defined a "substantial burden" to be one that is "'oppressive' to a
'significantly great' extent, such that it renders religious exercise 'effectively impracticable.'"
*Sefeldeen v. Alameida,* 238 F. App' x. 204, 206 (9th Cir. 2007) (quoting *San Jose Christian Coll.
v. City of Morgan Hill,* 360 F.3d 1024, 1034–35 (9th Cir. 2004)).  Mr. Forter has not shown that
the practice of his Christian Identity faith is "effectively impracticable" without access to the
eight pamphlets.  The strongest conclusion the evidence supports is that the original package in

its entirety is critical to his ability to practice his faith, and therefore that the prison would have imposed a substantial burden had it continued to withhold the entire package. (*See* Forter Dep. [40] Att. 1 at 63:23–64:6) (the contents of the package constitute "the seminal work on . . . Christian Identity"); (Decl. of M. Hallimore [81]) (Bernard Comparet and Wesley Swift— authors of some of the package's contents— are "considered the two foremost theologians and authorities on the Christian Identify faith").

Such evidence is not sufficient to support the claim that defendants' continued withholding of only eight pamphlets constitutes a substantial burden because Mr. Forter has not introduced evidence showing that those pamphlets are uniquely important. The literature Mr. Forter is currently permitted to view constitutes the majority of what he originally requested, and it also contains several publications authored by Mr. Comparet and Mr. Swift. (*See* Decl. of R. Geer [64] 7 n.8); (Pl.'s Resp. Def. Mot. Summ. J. [79] Ex. A).

Where the evidence does not support a distinction between the eight pamphlets and the remainder of the package in terms of their instrumentality to the practice of Mr. Forter's faith, and where Mr. Forter is now permitted to possess the remainder of the package, the record as a whole cannot sustain the argument that defendants' decision to continue withholding the eight pamphlets renders Mr. Forter's religious exercise "effectively impracticable." *See Sefeldeen,* 228 F. App'x. at 206. Accordingly, the evidence does not support a factual dispute regarding RLUIPA's "substantial burden" requirement as applied to this case, and defendants are entitled to summary judgment on Mr. Forter's RLUIPA claim.

### 2. Least Restrictive Means

In the alternative, summary judgment is appropriate because even if Mr. Forter's circumstances triggered RLUIPA, defendants have satisfied its "least restrictive means" requirement.

Once a plaintiff shows a "substantial burden," the responsibility shifts to the defendants to establish that the burden accomplishes a compelling penological interest, and that it is the least restrictive means to accomplish that interest. *Greene v. Solano Cnty. Jail,* 513 F.3d 982, 988 (9th Cir. 2008). Defendants convincingly assert that that they withheld the pamphlets to promote prison security, (Geer Dec. [64] 7), and prison security is a compelling interest as a matter of law. *Culler v. Wilkinson,* 544 U.S. 709, 725 n.13 (2005). Thus, the only remaining question is whether the evidence establishes that defendants employed the least restrictive means to accomplish that interest.

To satisfy their burden, defendants must establish that they considered and rejected the efficacy of less restrictive means. *Greene,* 513 F.3d at 989 (citing *Warsoldier,* 418 F.3d at 999). This standard does not imply that defendants can compel summary judgment merely by establishing that some alternative was considered and rejected. Rather, the evidence must establish that the defendants considered those alternatives the court finds that they reasonably should have considered. *See, e.g., United States v. Playboy Entertainment Group, Inc.,* 529 U.S. 803, 824 (2000) ("A court should not assume a plausible, less restrictive alternative would be ineffective."). The standard also does not mean, however, that the court should deny summary judgment merely because it can concoct some hypothetical alternative that defendants do not appear to have considered. *Illinois State Bd. Elec. v. Socialist Workers Party,* 440 U.S. 173, 188–89 (1979).

In this Court's judgment, the record establishes that before deciding to withhold the eight pamphlets, defendants considered and rejected any less restrictive alternatives they reasonably should have considered. (*See* Decl. of R. Geer [64] 6–8). Mr. Geer's declaration asserts that upon reviewing the contents of the package a second time, defendants evaluated the contents of

each individual pamphlet or book before deciding to withhold eight pamphlets that were particularly inflammatory. *Id.* This Court can surmise only two less restrictive alternatives the defendants should have considered: (1) allowing individual pamphlets in their entirety, or (2) allowing redacted versions of them. Regarding (1), the Court is satisfied that defendants' description of their decision-making process during the second review, as described in Mr. Geer's declaration, establishes that they considered the possibility of allowing each pamphlet before rejecting that possibility with respect to eight of the pamphlets. Regarding (2), Mr. Geer's Declaration establishes that the defendants have considered the possibility of redaction, and have rejected it on the bases that it would require more resources than the mail room has, and also that it would preclude the possibility of obtaining refunds for literature that inmates purchased but are not permitted to read. *Id.* at 6.

Because the record establishes that defendants considered and rejected the efficacy of reasonable alternatives before withholding the eight pamphlets, and because neither this Court nor Mr. Forter can offer additional less restrictive alternatives that defendants should have considered, no material dispute exists regarding defendants' position that they engaged in the least restrictive means to ensure prison security. Accordingly, I grant defendants' Motion for Summary Judgment on Mr. Forter's RLUIPA claim.[5]

---

[5] Defendants imply that Mr. Forter bears the burden of producing less restrictive alternatives. (*See* Mem. Supp. Def. Mot. Summ. J. [63] 11) ("Plaintiff has not suggested any least restrictive alternative."); (Reply in Supp. Def. Mot. Summ. J. [86] 5–6) ("[D]efendants have used the least restrict means to meet [the] compelling interest. Plaintiff has failed to offer any evidence to the contrary."). That premise is incorrect. Nevertheless, Mr. Forter's failure to suggest reasonable less restrictive alternatives becomes a decisive factor when paired with this Court's independent judgment regarding what factors defendants should have considered, as well as with Mr. Geer's declaration that establishes that defendants considered and rejected the efficacy of these alternatives.

## CONCLUSION

Defendants' Unenumerated 12(b) Motion to Dismiss [58] is GRANTED.  Mr. Forter's claims listed in that motion are dismissed without prejudice, as discussed above.  Defendants' Motion for Summary Judgment [62] is GRANTED.

IT IS SO ORDERED.

DATED this __17th__ day of April, 2012.

/s/ Michael W. Mosman____
MICHAEL W. MOSMAN
United States District Court